IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JOSEPH SERNA, SANTANA BUSTAMANTE,
GABRIEL M. BLEA, RONNIE CARILLO, JR.,
ALIFONSO DELEON, GERMAN JACQUEZ-TORRES,
GUY J. JORDAN, DAVID WAYNE JOURDAN,
ADELINE MARTINEZ, ANTHONY MARTINEZ,
CHRISTOPHER M. MARTINEZ, ROMAN MARTINEZ,
KENNETH MERCURE, LEA PACHECO,
ELIZABETH RAMIREZ, ROSE RASCON,**
and **CHRIS VALDEZ,** on behalf of themselves and
all others similarly situated,

      Plaintiffs,

v.                                                **No. CV 1:17-00196 RB-KBM**

**BOARD OF COUNTY COMMISSIONERS
OF RIO ARRIBA COUNTY**,

      Defendant.

## MEMORANDUM OPINION AND ORDER

This is an employment case involving detention workers at a prison. The workers have sued their employer, the Board of County Commissioners of Rio Arriba County (County), accusing the County of not paying them for time worked. The County disputes the workers' claims and has filed a motion for partial summary judgment. (Doc. 44.) For the reasons set forth below, the Court **grants in part and denies in part** the County's motion.

In their response to the summary judgment motion, the workers seek to amend their complaint. The Court **denies** the workers' request. Additionally, the Court will allow the workers another opportunity to respond to some of the County's arguments by August 20, 2018, as described in the Opinion.

# BACKGROUND[1]

Plaintiffs are detention recruits, detention officers, and detention supervisors (collectively, "Correctional Officers" or "Workers") employed by the Rio Arriba County Detention Center. (Doc. 44 at 2.) Their duties involve ensuring the secure and orderly detention of inmates at the detention facility. (*See id.*) To perform their duties at the detention center, which is always staffed, the Correctional Officers usually work 12-hour shifts from 8:00 a.m. to 8:00 p.m. or 8:00 p.m. to 8:00 a.m. (*Id.*)

Approximately 15 minutes prior to their shifts, Correctional Officers are required to report to work. (*See* Docs. 64-A at 2; 64-B at 2; 64-C at 2; 64-D at 2; 64-E at 2 (affidavits from Correctional Officers testifying about the requirement to arrive 15 minutes early).) During this time, incoming and outgoing supervisors conduct a shift-change headcount and briefing. (*See* Doc. 65 at 5–6.) The incoming supervisor then heads to the muster room—the non-secure area of the facility—where incoming detention recruits and officers are waiting, and conducts a group briefing about the upcoming shift. (*Id.* at 6.) The group briefing conveys information such as the inmates who need to be prepared for court, inmates on suicide or medical watch, inmates who had been disruptive during the previous shift, upcoming visits from law enforcement, and mechanical issues with the facility. (*Id.*)

After the group briefing, individual officers and recruits head to their respective posts and conduct a post-specific briefing with their outgoing counterparts. (*Id.* at 7.) The post-specific briefing includes information such as the inmates who need recreational time or who need to be released for work details during the upcoming shift. (*Id.*) Until the post-specific briefing is complete, the outgoing detention recruit or officer may not leave his post—so if the post-specific

---
[1] The facts below are either undisputed or, where disputed, taken in the light most favorable to the plaintiff and resolved in the plaintiff's favor where plaintiffs provide supporting evidence. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013) (citation omitted).

briefing started or ran late, the outgoing employee would be conducting the briefing outside of his scheduled hours. (*Id.*) Despite the pre- and post-shift time Workers spend, the County only pays for time worked during scheduled shifts. (Doc. 64 at 23.)

The Correctional Officers sued the County for its employment practices, alleging violations of New Mexico and federal employment laws. (Doc. 1 at 4.) Among other things, the Correctional Officers argue that they were unfairly compensated for their pre- and post-shift work and that the County incorrectly calculated their compensatory time. (*See id.* at 2–4; Doc. 64 at 23.) The County seeks partial summary judgment on the Correctional Officers' claims. (Doc. 44 at 1.)

## LEGAL STANDARD

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment is not appropriate, however, if there are factual issues that "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding whether there are genuine factual issues, a court cannot weigh the evidence, *id.* at 249, or judge the credibility of witnesses, *Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). Instead, the court must view the facts in the light most favorable to the nonmoving party and resolve all factual disputes and reasonable inferences in the nonmoving party's favor. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013).

## DISCUSSION

### I. Burden of Proof

Congress passed the Fair Labor Standards Act (FLSA) to protect vulnerable employees from "substandard wages and excessive hours which endangered the national health and well-

being . . . ." *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Part of the FLSA's regime for protecting employees is to facilitate shorter workdays by requiring employers to pay increased, overtime wages to employees who work overtime hours. *See Chavez v. City of Albuquerque*, 630 F.3d 1300, 1304 (10th Cir. 2011). To make possible enforcement of its terms, § 11 of the FLSA compels employers to "make, keep, and preserve records" of their employees' "wages, hours, and other conditions and practices of employment . . . ." 29 U.S.C. § 211(c).

If an employer does not pay an employee adequate overtime wages, the employee may sue for unpaid overtime compensation. In such a suit, the burden of proof usually rests on the plaintiff-employee to prove by a preponderance of the evidence the number of hours worked and the amount of wages owed for each pay period. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946) (superseded by statute on other grounds). But if the employer fails to keep adequate records as required by § 11, then the plaintiff-employee has a lower burden of proof: produce evidence of the amount and extent of uncompensated overtime work as a matter of "just and reasonable inference." *Baker v. Barnard Const. Co., Inc.*, 146 F.3d 1214, 1220 (10th Cir. 1998).

The "just and reasonable inference" standard is applicable in this case, as the evidence shows that the County did not keep adequate employment records. The County's timekeeping system registered an employee's "actual" clock-in and clock-out time as well as the "official" clock-in and clock-out time used for paying wages. (*See* Doc. 64-A-2 at 1.) The "actual" time registered often differed from the "official" time. (*See id.* at 6.) For example, detention officer Santana Bustamante's timesheets reflect that she actually clocked in at 7:29 p.m. on September 21, 2015, but her official clock-in time showed 8:00 p.m. (*Id.*) Aside from the mismatched actual and official times, the accuracy of the recorded actual time is also in doubt. When Bustamante

4

inspected the time-in and time-out for November 26, 2017, the display on the timekeeper showed Bustamante's time-in as 7:30 p.m. (Doc. 64-A-3.) The timesheets produced in discovery, on the other hand, show Bustamante's actual time-in as 7:27 p.m. and official time-in as 8:00 p.m. (Doc. 64-A-2 at 19.) This means the time displayed on the physical timekeeper differed from both the actual and official time on the timesheets. Further, Bustamante documented clocking in at 7:46 p.m. on December 9, 2017, (Docs. 64-A at 4; 64-A-6), but the timesheet shows Bustamante's actual clock-in time as 8:00 p.m., (Doc. 64-A-2 at 19). Viewed in the light most favorable to the Correctional Officers, a reasonable inference from the evidence is that the County's timekeeping is inaccurate. The Correctional Officers may thus estimate their hours worked and unpaid compensation as a matter of just and reasonable inference.

## II. Computability of Time Worked and Wages Earned

Case law details what satisfies the just and reasonable inference standard. In *Mencia v. Allred*, the Tenth Circuit clarified that neither an expert nor an economics report is necessary to establish a just and reasonable inference. *Mencia v. Allred*, 808 F.3d 463, 473 (10th Cir. 2015). "[A]ll a fact-finder needs to calculate damages is the hourly wage, the number of hours worked, and the amount already paid." *Id.* Because two people had testified about the plaintiff's hours in *Mencia*, the Tenth Circuit held that "there is sufficient evidence in the record for a fact-finder to estimate [the plaintiff's] hours." *See id.* In *Jimenez v. Board of County Commissioners of Hidalgo County*, the Tenth Circuit held that under "the more lenient 'just and reasonable inference' standard of proof," testimony about the length of pre-shift briefing was sufficient for a factfinder to calculate how much overtime plaintiffs were owed. *Jimenez v. Bd. of Cty. Comm'rs of Hidalgo Cty.*, 697 F. App'x 597, 599 n.2 (10th Cir. 2017). And another trial court in this district has suggested that testimony enabling a court to find "a consistent pattern of overtime

work" may be sufficient when coupled with other types of evidence. *Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty.*, No. CV 13-0971 JB/GBW, 2015 WL 7873813, at *15 (D.N.M. Oct. 20, 2015), *aff'd in part*, *rev'd in part sub nom.*, *Jimenez v. Bd. of Cty. Comm'rs of Hidalgo Cty.*, 697 F. App'x 597 (10th Cir. 2017) (citations omitted).

Pre-Shift Time

Here, Correctional Officers provide five affidavits in which current and former employees testify that the County required Workers to arrive about 15 minutes early to complete pre-shift briefing and timely relieve outgoing employees. (*See* Docs. 64-A at 2; 64-B at 2; 64-C at 2; 64-D at 2; 64-E at 2.) The affidavits are corroborated by the deposition of the Detention Administrator, Larry DeYapp. When asked in his deposition whether Workers attend a briefing prior to their shifts, DeYapp responded, "Yes, they do. *They're supposed to*." (Doc. 44-1 at 2 (DeYapp Deposition) (emphasis added).) When asked about the length of the briefing, DeYapp replied, "Briefing is approximately about five minutes, *maybe ten* . . . ." (*Id.* (emphasis added).) Under the lower just and reasonable inference standard, a jury could find from the record that Correctional Officers were required to report to work about 15 minutes prior to each shift. Since the pay rate for the individual Correctional Officers is not in dispute, a jury could reasonably approximate unpaid compensation for the pre-shift briefing.

Of course, the dispute is not over once plaintiffs prove compensation as a matter of just and reasonable inference. The defendant has the opportunity and burden to "produce evidence of the precise amount of work performed or to negate the reasonableness of the inference drawn from the employee's evidence." *Donovan v. Simmons Petroleum Corp.*, 725 F.2d 83, 85 (10th Cir. 1983). But "[i]f the employer does not rebut the employee's evidence, then damages may be awarded even though the result is only approximate." *Id.*

6

The County has not rebutted the Correctional Officers' claims with evidence of the precise amount of work performed—unsurprising given the above-mentioned faults with the timekeeping system. Nor has the County shown that it is unreasonable to believe that it requires Workers to arrive about 15 minutes early: though DeYapp strenuously denies telling staff to report to work 15 minutes early, the five sworn affidavits to the contrary and DeYapp's own deposition testimony allow a jury to reasonably conclude that the County required Workers to report for work 15 minutes before their scheduled shifts. Accordingly, the County has not carried its rebuttal burden. The Court denies summary judgment to the extent the County claims the Correctional Officers cannot meet their burden of proof for unpaid compensation from pre-shift briefings.

Post-Shift Time

In addition to compensation for *pre*-shift briefings, the Correctional Officers also suggest they should be compensated for any *post*-shift briefings they conduct with their replacement. (Doc. 64 at 10–11.) Unlike the case for pre-shift briefings, however, the Correctional Officers cannot adequately prove their post-shift compensation. In contrast to pre-shift briefings, post-shift briefings are not required by the County—the very purpose for having incoming employees arrive early is to avoid holding outgoing employees past their shifts. (*See, e.g.*, Doc. 64-B at 2 ("Larry DeYapp addressed my group and would remind us of the requirement to arrive 15 minutes early in order to . . . relieve the outgoing shift on time.").) And in contrast to the pre-shift briefings, which occur prior to *each* shift, the record does not reveal a pattern of post-shift briefings. Though Correctional Officers allege that they "frequently" must stay past their shifts to brief their replacement, (Doc. 64 at 11), their affidavits provide little detail about how often they must stay late. Because Correctional Officers raise only vague allegations about the post-shift

7

briefings, they cannot prove their owed overtime compensation from such briefings as a matter of just and reasonable inference. The Court grants the County's motion for summary judgment as it relates to post-shift briefing by outgoing Workers.

Incorrect "Washing" Calculations

Similarly, Correctional Officers cannot meet their burden of proof on their claim involving the County's calculations in "washing" leave. "Washing" leave describes the County's practice of counting only actual hours worked—and not sick or annual leave—when tabulating compensatory time. So if a Correctional Officer actually works 80 hours and uses 5 hours of sick leave in a week, the County only counts 80 hours for overtime purposes. The Workers concede that the practice of washing leave is proper. (Doc. 64 at 1.) But they express reservations about the accuracy of the County's calculations given the County's practices and inaccurate timekeeping—suggesting that the County may have unduly reduced compensatory time in the process of washing leave. (*See id.* at 23.)

The problem for the Workers is that they carry the burden of proof. The County's faulty timekeeping only lowers their burden; it does not shift the burden to the County. Since the Correctional Officers have not provided evidence to support their speculation that the County's washing calculations deprived them of compensatory hours, the Court grants summary judgment against the Correctional Officers on this issue.

**III. Whether the Pre-Shift Briefings are Compensable**

A separate issue, apart from whether Workers can prove the length of their pre-shift briefing, is whether the pre-shift briefing is compensable under the FLSA. "The FLSA typically requires an employer to compensate employees for all the time that the employee spends working on the employer's behalf." *Castaneda v. JBS USA, LLC*, 819 F.3d 1237, 1241 (10th Cir.

8

2016), *as amended on denial of reh'g and reh'g en banc* (May 3, 2016) (citation omitted). But as amended by the Portal-to-Portal Act, the FLSA's compensable work excludes "time spent walking to and from the employee's workstation or other 'preliminary or postliminary activities.'" *Tyson Foods, Inc. v. Bouaphakeo*, ––– U.S. –––, 136 S. Ct. 1036, 1042, 194 L. Ed. 2d 124 (2016). Notwithstanding these exclusions, those preliminary activities that are "integral and indispensable" to an employee's principal activities are still compensable. *Id.*

An activity is not integral and indispensable to an employee's regular work simply because an employer requires the activity. *See Integrity Staffing Sols., Inc. v. Busk*, ––– U.S. –––, 135 S. Ct. 513, 519, 190 L. Ed. 2d 410 (2014). To be integral and indispensable, the activity must be an "intrinsic element" of the regular work, without which the employee cannot perform his principal duties. *See id.* at 517. Applying this standard, *Integrity Staffing* held that post-shift screenings designed to deter theft are not an intrinsic element of the duties of warehouse employees, and thus warehouse employees could not be compensated for the time they spent on such screenings. *Id.* at 518.

On the other hand, battery-plant employees could be compensated for the time they spent "showering and changing clothes because the chemicals in the plant were 'toxic to human beings . . . .'" *Id.* (citing *Steiner v. Mitchell*, 350 U.S. 247, 251–52 (1956)). Meatpackers could be compensated for the time they spent "sharpening their knives because dull knives would 'slow down production' on the assembly line, 'affect the appearance of the meat as well as the quality of the hides,' 'cause waste,' and lead to 'accidents.'" *Id.* (citing *Mitchell v. King Packing Co.*, 350 U.S. 260, 262 (1956)). And, perhaps most applicable to this case, a 911 dispatcher could be compensated for the pre-shift time it took her to obtain information "regarding what was

9

occurring in the County involving first responders at the time she began her shift." *Jimenez*, 697 F. App'x at 599.

The Correctional Officers' duties in this case included "maintaining custody and control of inmates, patrolling designated areas, controlling traffic in assigned areas, maintaining security, and ensuring the safety of inmates." (Doc. 44 at 2.) The information conveyed in the briefings included which inmates were on suicide or medical watch, which inmates had been disruptive, and mechanical issues with the facility—such as faulty doors. (Docs. 64 at 10; 64-C at 2.) Like showering for battery-plant employees, sharpening knives for meatpackers, or obtaining information about first responders for 911 dispatchers, knowing who is at risk of committing suicide, who had recently been disruptive, or which doors would lock is intrinsically important to the Correctional Officers' duties of keeping staff and inmates safe. The pre-shift briefings at issue are thus compensable as an integral and indispensable element of the Correctional Officers' work. To the extent it argues to the contrary, the County's motion is denied.

**IV. Detention Officers' and Recruits' On-Call Time while waiting for Briefing**

Though pre-shift briefings are compensable, not all Workers are engaged in briefing activity during the entire 15 minutes before their shifts. The pre-shift briefing encompasses the supervisor-to-supervisor briefing, the supervisor-to-group briefing, and the post-specific briefing between incoming and outgoing detention officers and recruits. (*See* Doc. 64 at 9–10 (explaining what happens during the 15-minute period).) This means that while supervisors are engaged during the entire 15-minute period, officers and recruits must wait during the supervisor-to-supervisor briefing. (*See* Doc. 64 at 10 (explaining that supervisors briefed officers *after* receiving supervisor-to-supervisor briefing).) The next issue, then, is whether the time detention officers and recruits spend waiting for briefing is compensable.

"Whether periods of waiting for work should be compensable under the FLSA is to be determined by the facts and circumstances of each case." *Norton v. Worthen Van Serv., Inc.*, 839 F.2d 653, 654 (10th Cir. 1988). The main question is whether the restrictions on the employee during the waiting period are "so burdensome as to render it time predominantly spent for the benefit of the employer." *Bustillos*, 2015 WL 7873813, at *15 (citing *Gilligan v. City of Emporia*, 986 F.2d 410, 412 (10th Cir. 1993)). In answering this question, courts consider various factors, importantly among them the geographical restrictions on the employee and the degree to which the employee could engage in personal activities. *Norton*, 839 F.2d at 655.

The County suggests that detention officers and recruits should not be compensated while waiting for pre-shift briefing because those Workers are able to engage in personal tasks: "[e]mployees waiting for briefings in the muster room socialize, read the news, text, check social media and relax." (Doc. 44 at 11.) But the fact that the County does not prevent *all* personal activity is not dispositive. *See Pabst v. Okla. Gas & Elec. Co.*, 228 F.3d 1128, 1135 (10th Cir. 2000) ("The relevant inquiry in on-call cases is not whether plaintiffs' duties prevented them from engaging in any and all personal activities during on-call time . . . ."). Here, time and geographical constraints hampered the officers' and recruits' ability to engage in personal activity. First, the officers' and recruits' waiting time was at most ten minutes, drastically reducing the personal activities available to them. (*See* Doc. 64-D at 2 (explaining that the supervisor-to-supervisor headcount takes about eight to ten minutes).) Second, the officers and recruits are geographically limited because they are waiting on the County's premises (in the muster room). Waiting on the employer's premises is widely recognized as a burdensome restriction that strongly militates in favor of finding the time compensable. *See, e.g.*, 29 C.F.R. § 785.17 ("An employee who is required to remain on call on the employer's premises or so

close thereto that he cannot use the time effectively for his own purposes is working while 'on call.'"), *Norton*, 839 F.2d at 655 (discerning a pattern among cases in which courts found waiting time compensable when employees were forced to wait on or close to the employer's premises).

Though officers and recruits could still engage in some personal activity while waiting to be briefed, the time and geographic burdens on them, coupled with the benefit to the County of having smooth and timely transitions between shifts, renders the waiting period primarily a benefit to the County. The waiting time is thus compensable, and the Court denies the County's contrary argument.

**V. De Minimis**

The County also argues that the 15-minute pre-shift time is de minimis and not compensable. (Doc. 44 at 16–19.) Under the de minimis doctrine, "insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded" for purposes of the FLSA. *Castaneda*, 819 F.3d at 1242 (citing 29 C.F.R. § 785.47). However, the de minimis rule "applies only where there are uncertain and indefinite periods of time . . . and where the failure to count such time is due to considerations justified by industrial realities." 29 C.F.R. § 785.47. "An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him." *Castaneda*, 819 F.3d at 1243 (citing 29 C.F.R. § 785.47).

The Tenth Circuit judges whether an activity is de minimis by first determining the amount of time spent on additional work. *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1333 (10th Cir. 1998). After determining the amount of time involved, courts then consider three additional

12

factors: (1) "the practical administrative difficulty of recording the additional time," (2) "the size of the claim in the aggregate," and (3) "whether 'the claimants performed the work on a regular basis.'" *Id.* at 1333–34 (citation omitted).

The Correctional Officers have credibly alleged that they are required to work 15 additional minutes prior to their scheduled shifts. Because the 15 minutes is a *fixed* time *required* by the County, there is a fair argument that the analysis ends here and the County cannot disregard the time as de minimis. *Jimenez*, 697 F. App'x at 599 (refusing to find five-minute pre-shift briefing de minimis as it was a "fixed or regular working time"). The three additional factors reinforce the conclusion that the time is not de minimis.

On the first factor, it is not administratively difficult to record when Workers check in for pre-shift briefing. The County has a timekeeper that records time to the minute, (*see* Doc. 64-A-2 at 4 (showing time recorded to the minute)), so if the timekeeper logged the minutes correctly, keeping track of when Workers attend mandatory pre-shift briefings would be simple. The County notes that different Workers may arrive at different times for the briefing—some arrive much earlier than 15 minutes prior to their shifts while others arrive after their shifts. But if the County only requires an early-arrival time of 15 minutes, then the maximum credit any Worker could receive is 15 minutes, notwithstanding their decision to be on the premises earlier. And those who come past their scheduled shifts simply would not receive credit for the missed time.

Moving to the second factor, the size of the claim in the aggregate is significant. The aggregate claim can be measured by counting the total number of workers or by adding the pay owed to each employee. *Reich*, 144 F.3d at 1334. There are numerous named plaintiffs, some of whom have been working at the County for years. The aggregate claim is therefore sizeable whether aggregated by number of claimants or by the size of each individual's claim.

On the last factor, the regularity of the additional work, the 15 minutes of additional time was required before each shift. Thus, considering the three factors and the fixed nature of the 15 minutes of additional time, the Court rules that the 15-minute pre-shift time is not de minimis. The County's motion for summary judgment is denied to the extent it argues to the contrary.

**VI. Abandoned Claims and Opportunity to Respond**

The discussion until now focused on fully-briefed, disputed issues. There were, however, arguments the County raised in its motion that the Workers did not dispute. The County argued that Count I of the complaint, brought pursuant to New Mexico's minimum wage law, should be dismissed because that law does not apply to public employers. (Doc. 44 at 10.) And the County argued that the practice of "washing" compensatory time is lawful. (*Id.* at 19–20.) The Correctional Officers explicitly conceded both those arguments in its response. (Doc. 64 at 1 ("Plaintiffs do not dispute that the State Minimum Wage Law does not apply to the County, and that the practice of "washing" compensatory time is lawful.").) The Court considers the Correctional Officers to have abandoned any claims based on New Mexico's minimum wage law and the practice of washing compensatory time, and the Court grants summary judgment in the County's favor on those claims.

The County also brought other arguments that the Correctional Officers neither conceded nor disputed. For example, the County also sought summary judgment on claims involving holidays worked, forced use of compensatory time, shift substitutions, and timeliness of payments. (Doc. 44 at 21–25.) The Correctional Officers have not responded to these arguments. (*See* Doc. 65 at 11–12 (noting the Workers' silence).)

Many courts have held that summary judgment should not be granted—in whole or in part—simply because the nonmovant has not responded. *See, e.g.*, *Jackson v. Fed. Exp.*, 766

F.3d 189, 194–95 (2nd Cir. 2014) ("Rule 56 does not allow district courts to automatically grant summary judgment on a claim simply because the summary judgment motion, or relevant part, is unopposed."), *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993) ("[T]he court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine . . . whether the moving party is entitled to summary judgment as a matter of law."); *but see Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 734–35 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument."). But a partial response, in which the nonmovant resists summary judgment as to some claims while not mentioning others, may be interpreted as abandonment of the unmentioned claims. *Jackson*, 766 F.3d at 194–95; *see also Custer*, 12 F.3d at 415 ("If the court were to determine that the plaintiff's failure to respond constituted a failure to prosecute, then it could dismiss the action.").

The Correctional Officers clearly know how to abandon a claim—they did so with their state law and washing leave claims. But they also clearly know how to defend a claim, thus leaving the mystery of why the Correctional Officers did not respond to some of the County's arguments. Pursuant to Rule 56(e), the Court will allow the Correctional Officers until **August 20, 2018**, to respond to the County's untouched arguments noted above. *See* Fed. R. Civ. P. 56(e) (allowing courts to give an unresponsive party an additional opportunity to respond). If the Correctional Officers respond in time, the County has **seven days** from the date of the response to reply. For any of the County's arguments to which the Correctional Officers choose not to respond, the Correctional Officers will be deemed to have abandoned the claims at issue.

**VII. Request to Amend Complaint to add Claim for Breach of Contract**

As noted, the County seeks summary judgment on the Correctional Officers' claims involving compensatory time on holidays. (Doc. 44 at 21–22.) Specifically the County argues

15

that its holiday-pay practices comport with the FLSA. Rather than dispute the County's FLSA argument, the Correctional Officers instead try to amend their complaint to add a breach of contract claim, because the County's holiday-pay practices allegedly differed from its written policy. (Doc. 64 at 24.)

If the Correctional Officers intended their response to double as a motion to amend their complaint, then their motion is defective in at least two ways. First, they did not comply with the local rules because they did not attach the proposed amendment. D.N.M. LR-Civ. 15.1. Second, the deadline to amend pleadings as set forth in the scheduling order has passed, (Doc. 12 at 2), and the Correctional Officers have supplied no good cause for the delay.

"[A] scheduling order 'may be modified only for good cause and with the judge's consent.'" *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (citing Fed. R. Civ. P. 16(b)(4)). Good cause means that a party could not comply with the scheduling order despite its diligent efforts. *Id.* For example, the good cause requirement "may be satisfied . . . if a plaintiff learns new information through discovery or if the underlying law has changed." *Id.* (citation omitted). But if the plaintiff knew of the underlying conduct and simply failed to raise the claim, then the claim is barred. *See id.* (citations omitted).

The Correctional Officers have long believed that the County's holiday pay practices differ from its policy:

> I have not received the proper amount of compensatory time on holidays worked. Under County policy, my regular rate of pay is higher on holidays, in that I am to earn compensatory time at time and a half. However, the County only compensates me compensatory time for 8 hours on holidays, despite the fact that I work 12 hour shifts.

(Doc. 44-10 (The Correctional Officers' Answers to the County's First Set of Interrogatories).) The underlying conduct was thus known to the Correctional Officers, and the Correctional

16

Officers have supplied no intervening material change to contract law. Accordingly, the Court denies the Correctional Officers' request to amend their complaint.

## CONCLUSION

In sum, the Court **grants in part and denies in part** the County's motion for summary judgment. The Correctional Officers' Count I is dismissed with prejudice, as are the portions of Count II where the Court granted summary judgment in favor of the County.

The Court **denies** the Correctional Officers' request to amend their complaint. The Workers have until August 20, 2018, to respond to the County's unaddressed arguments. The County may then reply as described in this Opinion.

_____
**ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE**