# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JOSEPH SERNA, SANTANA BUSTAMANTE,
GABRIEL M. BLEA, RONNIE CARILLO, JR.,
ALIFONSO DELEON, GERMAN JACQUEZ-TORRES,
GUY J. JORDAN, DAVID WAYNE JOURDAN,
ADELINE MARTINEZ, ANTHONY MARTINEZ,
CHRISTOPHER M. MARTINEZ, ROMAN MARTINEZ,
KENNETH MERCURE, LEA PACHECO, ELIZABETH
RAMIREZ, ROSE RASCON and CHRIS VALDEZ,
on behalf of themselves and all others similarly situated,**

        Plaintiffs,

v.
                                   **No. 17-cv-196-RB-KBM**

**BOARD OF COUNTY COMMISSIONERS
OF RIO ARRIBA COUNTY,**

        Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' and Defendant's Amended Joint Motion to Dismiss Case with Prejudice (Doc. 74). The parties seek dismissal of the case as all 18[1] named plaintiffs have now entered into individual private settlement agreements with Defendant. Having reviewed the facts of the case and relevant law, and noting that the parties are both represented by counsel and have moved jointly to dismiss, the Court will **grant** the motion to dismiss and vacate the trial currently set for October 22, 2018 through November 2, 2018.

## I.    Background

### A.  Procedural History

Plaintiffs are current and former detention recruits, detention officers, and detention supervisors (collectively, "Correctional Officers") employed by Defendant at the Rio Arriba

---

[1] On May 30, 2017, Plaintiffs filed notice of Abraham Baca's consent to join the litigation. (Doc. 17.) However, Mr. Baca's name was not added to the caption in subsequent filings. The caption thus suggests there are only 17 plaintiffs, when in fact there are 18.

County Detention Center. (Doc. 1 (Compl.) ¶ 8.) They brought this action alleging Defendant violated the federal Fair Labor Standards Act (FLSA) by undercompensating Plaintiffs for time actually worked and withholding certain overtime compensation required by law. (*Id.* at ¶ 2; ¶¶ 18–25.) On August 13, 2018, the Court granted in part Defendant's Motion for Partial Summary Judgment (Doc. 69). Following that Order and Plaintiffs' amended Response (Doc. 70), the only remaining disputed issues were Defendant's alleged violations of the FLSA by (1) failing to compensate Plaintiffs for pre-shift time spent in briefings; and (2) failing to adequately compensate employees who engaged in "shift swapping" and were instructed not to clock in during shifts they were covering for other employees. (*See* Docs. 69 at 8–13; 70 at 3–4.)

On August 22, 2018, the parties filed a joint motion to dismiss the claims of 12 of the 18 Plaintiffs after they accepted settlement offers from Defendant. (Doc. 71.) On September 20, 2018, the parties filed an amended joint motion to dismiss the case with prejudice, as all 18 Plaintiffs have now reached settlement agreements with Defendant. (Doc. 74.) "All eighteen (18) Plaintiffs have now executed a Settlement Agreement and General Complete Release . . . contemplated to provide, *inter alia*, (1) a complete release of all claims Plaintiffs may have against Defendant, including claims under [FLSA] and (2) dismissal of the lawsuit with prejudice." (Doc. 74 at 2.) The question before the Court is whether the FLSA waiver in the parties' private settlement agreement is enforceable without Court or Department of Labor approval.

### B. Relevant Facts

Plaintiffs' duties as Correctional Officers include patrolling, inspecting, and otherwise ensuring the secure and orderly detention of inmates at the detention facility. (*See* Compl. at ¶ 8.) Correctional Officers usually work 12-hour shifts, and Plaintiffs allege that they were required to

report approximately 15 minutes prior to each shift's scheduled start time to participate in critical briefings on facility and inmate issues, but were not compensated for that time. (*See* Docs. 64-A at 2; 64-B at 2; 64-C at 2; 64-D at 2; 64-E at 2 (affidavits from Correctional Officers testifying about the requirement to arrive 15 minutes early).) Though the parties dispute how early Plaintiffs were expected to arrive and whether early arrival was truly "required," Defendant has acknowledged that Plaintiffs were at least "supposed" to arrive "a few minutes" before their scheduled shift. (*See* Docs. 44-1 at 2; 65 at 2.)

In its prior order, the Court denied Defendant's motion for summary judgment as to pre-shift time in large part because there are so many facts in dispute. (*See* Doc. 69.) As the Court described, inconsistencies abound in how Correctional Officers' time was tracked and recorded:

> The County's timekeeping system registered an employee's "actual" clock-in and clock-out time as well as the "official" clock-in and clock-out time used for paying wages. The "actual" time registered often differed from the "official" time. For example, detention officer Santana Bustamante's timesheets reflect that she actually clocked in at 7:29 p.m. on September 21, 2015, but her official clock-in time showed 8:00 p.m. Aside from the mismatched actual and official times, the accuracy of the recorded actual time is also in doubt. When Bustamante inspected the time-in and time-out for November 26, 2017, the display on the timekeeper showed Bustamante's time-in as 7:30 p.m. The timesheets produced in discovery, on the other hand, show Bustamante's actual time-in as 7:27 p.m. and official time-in as 8:00 p.m. This means the time displayed on the physical timekeeper differed from both the actual and official time on the timesheets.

(*Id.* at 4–5 (all internal citations omitted).)

Plaintiffs also allege that they would often cover shifts at the Detention Center for other employees, and were instructed not to clock in when covering shifts, but rather to seek payment or reciprocal shift coverage from the employee they were covering for. (*See* Docs. 44 at 23 (citing answers to Defendant's First Set of Interrogatories); 70 at 2.) Plaintiffs allege Defendant should have paid them for those swapped shifts, and that sometimes the employee that was supposed to cover for them in exchange would not show up, leaving them completely

uncompensated for the original shift they covered. (*See* Doc. 70 at 2–3.) The exact dates and lengths of the unpaid or uncompensated swapped shifts do not appear in the record. (*See id.* at 3 ("the County is not made aware when an employee covers another employees' [sic] shift").) Defendant argues that 29 U.S.C. § 207(p)(3) governs shift substitutions under the FLSA, and provides that when an employee substitutes for another employee's scheduled shift, that added shift is excluded from the calculation of overtime compensation.[2] (Doc. 70 at 3.)

## II.    Legal Standard for Settlements under the FLSA

The FLSA was enacted in 1938 to protect vulnerable employees from "substandard wages and excessive hours which endangered the national health and well-being." *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). At its core, the FLSA seeks to protect workers by: (1) mandating minimum wages to ensure that individual employees receive "a fair day's pay for a fair day's work," *id.* (internal quotation omitted); *see also* 29 U.S.C. § 206; and (2) facilitating shorter workdays by requiring employers to pay increased wages to employees who work overtime hours, *see* 29 U.S.C. § 207; *see also Chavez v. City of Albuquerque*, 630 F.3d 1300, 1304 (10th Cir. 2011).

Since individual employees often lack the resources and bargaining power to negotiate with their employers on an even playing field, the FLSA created a statutory enforcement scheme which "grants individual employees broad access to the courts." *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981). Employers who violate the FLSA are required to pay employees the total amount of unpaid wages due *and* additional liquidated damages in the same amount. *See* 29 U.S.C. § 216(b); *see also D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 110 (1946).

---

[2] The Court notes that while Defendant's practice of not considering these additional shifts *for purposes of calculating overtime* is in line with § 29 U.S.C § 207(p)(3) as cited by Defendant, the practice of not compensating employees at all for additional shifts appears not to be.

As amended, the FLSA enforcement structure allows employees to negotiate settlements of unpaid wages and liquidated damages under the supervision of the Department of Labor, and "an action to recover the liability . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees." 29 U.S.C. § 216.

The statute does not explicitly address, however, the validity of private settlement agreements resolving and waiving future FLSA claims. Early United States Supreme Court cases suggest that the Court was wary of allowing enterprising employers to undercut the protections and public policy goals of the FLSA by coercing employees into unfair settlement agreements. *See, e.g.*, *Brooklyn Savings Bank*, 324 U.S. at 704 (settlements waiving liquidated damages under the FLSA cannot be settled privately when there is not a true bona fide dispute between the parties) (emphasis added); *Gangi*, 328 U.S. at 114–15 (liquidated damages could not be waived or "bargained away" in a private agreement even when there was a bona fide dispute over the *applicability* of the FLSA, but "we need [not] consider here the possibility of compromises in other situations which may arise, such as a dispute over the number of hours worked or the regular rate of employment").

More recently, circuit courts have split on the issue of whether private settlements of bona fide disputes between employers and employees are valid under the FLSA without court or Department of Labor approval. In *Lynn's Food Stores, Inc.*, the Eleventh Circuit held that a private agreement between an employer and employees to compensate them far below the amount the Department of Labor had determined they were owed was invalid because it "violated the provisions and purposes of the FLSA." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982). In *Lynn*, the Department of Labor had undertaken an

official investigation—no private cause of action was involved—and determined that Lynn's Food Stores, Inc. had violated the FLSA by not adequately compensating employees at the minimum wage or for overtime worked. *See id.* The company then sought to undercut negotiations with the Department of Labor by reaching out to employees independently and offering them a settlement agreement of $1,000, split pro rata, in exchange for waiving all claims under the FLSA. *Id.* The Department of Labor, however, had determined that the company owed employees at least ten times that amount in unpaid wages. *Id.*

Furthermore, when the company presented the settlement agreement to employees it actively attempted to mislead and coerce them into signing. *See id.* at 1354. Some of the employees who signed the agreement did not even realize they had been underpaid, and none of them were represented by attorneys. *Id*. In holding the agreement was invalid, the court noted that "[s]ettlements] may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context," and in such case employees would be more "likely to be represented by an attorney who can protect their rights under the statute." *Id.*

In *Martin v. Spring Break '83 Productions, L.L.C.*, the Fifth Circuit held that a payment to employees pursuant to a private settlement agreement with their employer was "an enforceable resolution of those FLSA claims predicated on a bona fide dispute about time worked and not as a compromise of guaranteed FLSA substantive rights themselves." 688 F.3d 247, 255 (5th Cir. 2012). In that case, film production employees filed a grievance through their union alleging they were not paid for certain days of work in violation of the FLSA. *Id.* at 249. The parties entered into a settlement agreement to resolve disputes over how much overtime had

actually been accrued, after an investigation revealed that "it would be impossible to determine whether or not Appellants worked on the days they alleged they had worked." *Id.*

When the employees later filed suit seeking additional compensation under the FLSA, the Fifth Circuit held that the private settlement agreement barring future claims was valid because employees had actually been paid to resolve the dispute under FLSA, and there was a "bona fide dispute as to the amount of hours worked or compensation due." *Id.* at 255. The Fifth Circuit adopted the reasoning laid out in *Martinez v. Bohls Bearing Equipment Co. See* 361 F. Supp. 2d 608, 631 (W.D. Tex. Feb. 28, 2005) (surveying the history of the FLSA and subsequent caselaw and holding that "parties may reach private compromises as to FLSA claims where there is a bona fide dispute as to the amount of hours worked or compensation due. A release of a party's rights under the FLSA is enforceable under such circumstances").

**III.    Analysis**

The Court finds the Fifth Circuit's reasoning in *Martin* persuasive when applied to this case. Here: (1) individual plaintiffs brought a private right of action alleging FLSA violations; (2) there are bona fide factual disputes are over when and how often Plaintiffs were undercompensated, not Plaintiffs' core rights under the FLSA;  (3) both parties are and have been represented throughout the process by competent counsel; (4) the facts and legal arguments have been well-developed through the adversarial litigation process, and (5) all parties have agreed to dismiss the case and waive future claims under the FLSA as a result of their independent settlement agreements.

Importantly, motion practice and discovery leading up to the settlement agreement have revealed that the parties' remaining disputes concern how much time correctional officers spent attending pre-shift briefings, when they *actually* clocked in versus what the County's records

read, and how often employees covered shifts for others and weren't compensated for their time. (*See* Docs. 69 at 4–5; 70 at 2–3.) These are bona fide factual disputes much like the alleged unpaid days of work contemplated in *Martin*, which the court explained would be extremely difficult to calculate and determine with certainty. *See* 688 F.3d at 249.

This case bears no similarities to *Lynn*, where an employer attempted to use a private settlement agreement to avoid liability, undercut the Department of Labor's authority to enforce the FLSA, and manipulated its employees into accepting an unfair deal, all in the absence of litigation. *See* 679 F.2d at 1352. Instead, the parties here—each represented by counsel to protect their statutory rights—have reached a private settlement agreement following nearly 20 months of litigation. A carefully negotiated private agreement waiving future FLSA claims is the best and most efficient outcome for the parties and the Court, and is in line with the FLSA's important goals of "grant[ing] individual employees broad access to the courts" and ensuring they receive "a fair day's pay for a fair day's work." *Barrentine*, 450 U.S. at 740; *Brooklyn Sav. Bank*, 324 U.S. at 706 (internal quotation omitted).

**THEREFORE**,

**IT IS ORDERED** that the Parties' Amended Joint Motion to Dismiss with Prejudice (Doc. 74) is **GRANTED**, and the trial scheduled for October 22, 2018 through November 2, 2018 at the United States Courthouse in Las Cruces, New Mexico is hereby vacated.

_____
**ROBERT C. BRACK**
**SENIOR U.S. DISTRICT JUDGE**